UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CLANCEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-1480 |
| | § | |
| THE CITY OF COLLEGE STATION, TEXAS ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants City of College Station, Glenn Brown and Kathy Merrill's Motion to Dismiss Pursuant to FRCP Rules 12(b)(1) and 12(b)(6) (Doc. No. 9). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' motion should be denied without prejudice. Additional pleadings from Plaintiff must, however, be submitted.

### I.   BACKGROUND

This case arises from Michael Clancey's ("Clancey") termination as chief of police for the City of College Station, Texas ("College Station").[1] Clancey began his position as chief of police after a distinguished career at the Alexandria, Virginia Police Department, where he ultimately served as captain, and Westerville, Ohio, where he was also chief of police. All told, Clancey served in law enforcement for about twenty-five years before becoming chief of police for College Station. Clancey implemented "numerous new policies" during his tenure at College Station that increased the

---

[1] In considering the Rule 12(b)(6) motion to dismiss, the Court accepts the factual allegations in Plaintiff's complaint as true. *Frame v. City of Arlington*, 575 F.3d 432, 433-34 (5th Cir. 2009). Thus, the Court pulls relevant facts from Plaintiff's Original Complaint (Doc. No. 1).

1

efficiency and effectiveness of the police department. (Pl.'s Original Compl., Doc. No. 1, ¶¶ 14-25.) College Station's crime rate had decreased by 16% when Clancey left his position. (*Id.* ¶ 25.) The department also received "flagship status for having outstanding policies and procedures from a national accreditation agency," and was the only department in Texas to receive that designation. (*Id.* ¶ 26.)

Clancey was also active in the College Station community. He regularly "expressed disagreement" over College Station's policies. For example, at one point College Station considered installing traffic light cameras. The program was described as a revenue-generating program, and was listed for public discussion on College Station's City Council docket. Clancey voiced his opposition to the description of the program, arguing that the traffic camera proposal should be described as a public safety measure. (*Id.* ¶¶ 28-31.) Additionally, Clancey "regularly spoke out" on the City's staffing needs, voicing his opinion that College Station was critically understaffed and that the problem merited prompt resolution. (*Id.* ¶ 34.)

College Station was not receptive to the matters raised by Clancey, and Clancey contends that College Station began to retaliate against him.

Shortly after the incidents outlined above, Clancey was given counseling for poor performance by City Manager Glenn Brown and Assistant City Manager Kathy Merrill, also named Defendants in this case (collectively, "Brown and Merrill" or "Individual Defendants"). Brown and Merrill told Clancey to improve his performance by November 1, 2007, or he would be subject to termination. Brown and Merrill "failed to provide any details" as to how Clancey could improve his performance. (*Id.* ¶ 38.) After Clancey received his performance warning, Brown and Merrill privately accused Clancey of

violating College Station policy, untruthfulness, and unbecoming conduct. Without Clancey's knowledge, Brown and Merrill commenced an investigation into the allegations against him. (*Id.* ¶ 39.) On October 26, 2007, Brown and Merrill informed Clancey that he was being terminated. They gave Clancey the option of resigning from his post rather than being terminated. Prior to this meeting, Brown and Merrill never gave Clancey notice of the charges against him. (*Id.* ¶ 40-42.)

Clancey has sued College Station, Brown, and Merrill pursuant to 42 U.S.C. § 1983. He originally asserted violations of his procedural due process rights under the Fourteenth Amendment, and also alleged that Defendants terminated him in retaliation for his statements, in violation of the First Amendment. (*Id.* ¶¶ 44-51.) Clancey has since agreed to withdraw his procedural due process claim, which leaves the First Amendment retaliation claim at issue here. (Pl.'s Resp. to Defs.' Mot. to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), Doc. No. 18, at 1 n.1.)

Defendants now move to dismiss on the grounds that Clancey has failed to state a First Amendment claim, that the Individual Defendants and College Station are immune from suit, and that Clancey has failed to meet the pleading standards for a Section 1983 claim against a municipality and the defense of qualified immunity.

## II.     STANDARD OF REVIEW

### A. Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.

3

2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).

### B. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The doctrine of sovereign immunity defeats a court's subject matter jurisdiction. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009).[2] "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint

---

[2] Whereas sovereign immunity should be considered under the Rule 12(b)(1) standard, the qualified immunity asserted by the Individual Defendants is best considered under a Rule 12(b)(6) standard. *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996).

supplemented by undisputed fact plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In considering a Rule 12(b)(1) motion, "the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *Williamson*, 645 F.2d at 413)). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists by a preponderance of the evidence. *Id.* (citing *New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)).

### III. ANALYSIS

#### A. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). In examining whether an official is entitled to qualified immunity, a court "conduct[s] the two-step analysis" outlined in *Saucier v. Katz*. *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). *Saucier* maintained a "rigid 'order of battle,'" *id.* at 409, whereby qualified immunity was to be determined by examining first, whether the facts alleged show that an official violated a constitutional right, and second, whether that constitutional right was clearly established at the time of the violation. 533

U.S. 194, 200-01 (2001), *overruled in party by Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808 (2009). After the Supreme Court's decision in *Pearson v. Callahan*, a court need not address these two questions in that particular order. 129 S. Ct. at 818.

When a defendant properly asserts a defense of qualified immunity, the burden falls to the plaintiff to "'demonstrate the inapplicability of the defense.'" *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *McClenson v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

A plaintiff is not required to anticipate the defense of qualified immunity and "'provide greater specificity'" in a complaint. *Ellis v. Crawford*, 2005 WL 525406, at *4 (N.D. Tex. Mar. 3, 2005) (quoting *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam)). Instead, a plaintiff is obligated to file initially a "'short and plain statement'" of the claim pursuant to Rule 8(a)(2). *Id.* After a defendant answers with a qualified immunity defense, a court "may, in its discretion, insist that a plaintiff file a reply" pursuant to Rule 7(a) that addresses the qualified immunity question. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995). This reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* at 1433. A defense pleaded with particularity, then, will require particularity from the plaintiff's Rule 7(a) reply. *Id.*

### 1. Section 1983 First Amendment Claim

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

6

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead "'provides a remedy for the rights that it designates.'" *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). "'Thus, an underlying constitutional or statutory violation is a predicate to liability'" under Section 1983. *Id.* In this case, Clancey asserts that his free speech rights under the First Amendment constitute the underlying violation.

To establish a cause of action under Section 1983 for a First Amendment retaliation claim, a plaintiff must show the following: "(1) that she suffered an adverse employment action; (2) as a result of speech involving a matter of public concern; (3) that her interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency, and (4) that the adverse action was motivated by the protected speech." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).

The Individual Defendants contend that Clancey's suit must be dismissed on qualified immunity grounds for essentially two reasons. First, they argue that Clancey is unable to establish the violation of a clearly established right because he cannot show that he suffered an adverse employment action. Second, they argue that Clancey fails to plead with particularity that his speech involved a matter of public concern.

### a. Adverse employment action

The Fifth Circuit adopts a "narrow view of what constitutes an adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 157 (2000). Recognized adverse employment actions include "'discharges, demotions, refusals to hire, refusals to

promote, and reprimands.'" *Id.* (quoting *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). Under certain circumstances, transfers can also constitute adverse employment actions. *Id.* The court has suggested that disciplinary filings may also qualify. *See Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 580 (5th Cir. 2003) (noting that "the definition of adverse employment action under [Section] 1983 may include reprimands and disciplinary filings"). The court has otherwise "'declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech.'" *Breaux*, 205 F.3d at 157 (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998)). "The reason for not expanding the list of adverse employment actions is to ensure that [Section] 1983 does not enmesh federal courts in 'relatively trivial matters.'" *Id.* (quoting *Dorsett v. Bd. of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991).

Brown and Merrill argue that, because Clancey resigned from his post, he must establish a constructive discharge claim by showing that his working condition was so difficult or unbearable that a reasonable person in his shoes would have felt compelled to resign. (Defs. City of College Station, Glenn Brown and Kathy Merrill's Mot. to Dismiss Pursuant to FRCP Rules 12(b)(1) and 12(b)(6), Doc. No. 9, at 14.) Brown and Merrill contend that Clancey has failed to plead constructive discharge, and cannot do so because he suffered only criticism and negative performance reviews, which do not amount to a constructive discharge.

The Individual Defendants' argument is misplaced. As the Court reads the complaint, the relevant activity that constitutes the adverse employment action is

Clancey's resignation/termination, rather than his negative performance reviews. Clancey's discharge is included in the Fifth Circuit's list of adverse employment actions. To the extent that the Individual Defendants argue that Clancey cannot maintain his claim because he resigned in lieu of termination, this Court disagrees. This Court and other Texas federal courts have treated resignations, given in lieu of terminations, as adverse employment actions. *See, e.g.*, *Ibrahim v. City of Houston*, 2009 WL 1011193, 14-15 (S.D. Tex. Apr 15, 2009) (treating a resignation in lieu of termination as an adverse employment action); *McCoy-Eddington v. Brazos County*, 2007 WL 1217989, at *1 (S.D. Tex. Apr. 24, 2007) (same); *Vicari v. Ysleta Indep. Sch. Dist.*, 546 F. Supp. 2d 387, 413 (W.D. Tex. 2008) ("The Court concludes recommending non-renewal of [the plaintiff's] contract sufficiently qualifies as an adverse employment action, although [the plaintiff] subsequently resigned her employment at the TEA hearing."); *Denner v. Tex. Dep't of Criminal Justice*, 2006 WL 2987719, at *3 (W.D. Tex. Oct. 16, 2006) (finding that there was enough evidence for a jury to decide that plaintiff had suffered an adverse employment action, where plaintiff resigned ahead of termination and termination appeared certain); *Buster v. Dallas County Hosp. Dist.*, 1998 WL 460284, at *2 (N.D. Tex. July 24, 1998) (treating a resignation in lieu of termination as an adverse employment action). The Fifth Circuit has also recognized that a plaintiff may make out a claim of constructive discharge by demonstrating that he was forced to choose between resignation and termination. *Faruki v. Parsons*, 123 F.3d 315, 318 (5th Cir. 1997).

The Court acknowledges that several of the cases above were decided at some point past the dismissal phase, such as on motions for summary judgment, whereas the arguments here deal solely with the adequacy of the pleadings. But in the Court's view,

9

Clancey's pleading is sufficient to meet his initial burden of providing a "short and plain statement" pursuant to Rule 8(a)(2). As alleged, Clancey's facts state a claim that is plausible on its face.

The Court agrees with the Individual Defendants, however, that this prong of Clancey's claim does not survive the particularized pleading required in qualified immunity cases. The Court orders Clancey to file a Rule 7(a) reply tailored to the Individual Defendants' claim of qualified immunity, including particular facts surrounding his resignation/termination and why it constituted an adverse employment action. In his reply, Clancey may show why the resignation/termination amounted to a constructive discharge, or otherwise met the standard for adverse employment actions.

### b. Speech involving a matter of public concern

The second prong of a Section 1983 First Amendment claim requires that the relevant speech involve a matter of public concern. A court must examine the content, context, and form of the statements at issue to determine whether they are matters of public concern. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). "Speech that is primarily motivated by, or primarily addresses, the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under [Section] 1983." *Id.* at 341. In order to overcome the defense of qualified immunity, the plaintiff must be "specific as to when [his] statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Id.* at 342.

From its review of Clancey's complaint, the Court believes that the complaint does not meet even the *Iqbal* and *Twombly* standard, which requires a plaintiff to plead

10

more than conclusory statements. Even accepting the well-pleaded facts in the complaint as true and viewing them in the light most favorable to Clancey, the Court is of the opinion that Plaintiff's claim under the "public concern" prong is not plausible on its face. In his complaint, Clancey asserts simply that his statements on the traffic camera program and College Station's staffing needs were matters of public concern, without offering more detail. This conclusory assertion is insufficient to meet accepted pleading standards.

Because Clancey cannot meet the basic pleading standard, it follows that his complaint is insufficiently tailored to a defense of qualified immunity. The Court will allow Clancey the opportunity to cure both the initial failings of his complaint,[3] and to tailor his pleadings to the defense of qualified immunity, in a Rule 7(a) reply. Plaintiff may amend his pleadings in one document and file a Rule 7(a) reply in another, or he may do both in one document. Whatever form he chooses, Clancey must plead more than conclusions about whether his statements were matters of public concern in order to meet the basic pleading standard imposed by the Rules and the Supreme Court's recent decisions on notice pleading. Additionally, Clancey's reply must fairly engage in the Individual Defendants' assertion of qualified immunity, by providing specific information "as to when [his] statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Foley*, 355 F.3d at 342.

---

[3] "'[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In its discretion, the Court finds it appropriate to allow Clancey both to amend his original pleadings to meet the *Iqbal* and *Twombly* standard, and file a Rule 7(a) reply to respond to the Individual Defendants' qualified immunity defense.

### c. Adverse action motivated by protected speech

The Court also raises, as a *sua sponte* basis for dismissal, that Clancey has failed to meet the *Twombly* pleading standard on the fourth prong of a Section 1983 First Amendment claim, which requires that a plaintiff show that the adverse employment action in question was motivated by the protected speech. Clancey alleges no facts whatsoever to connect his statements to the subsequent action taken against him.

Although the Individual Defendants have not included this in their motion to dismiss, the court "may raise it *sua sponte* as a basis for dismissal as long as the procedure employed is fair to the parties." *Ellis v. Crawford*, 2005 WL 525406, at *7 (N.D. Tex. Mar. 3, 2005) (citations omitted). The Court orders Clancey to include relevant facts, which shall allege facts addressing the causal link between his speech and any adverse action he suffered, in his Rule 7(a) reply.

### B. Municipal Liability

A city cannot be held liable on a *respondeat superior* theory under Section 1983. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citations omitted). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To establish municipal liability under Section 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Id.*

A policy may arise in many forms. A plaintiff may "prove the existence of a municipal policy through, *inter alia*, the actions of the municipality's legislative body or

an individual with final decisionmaking authority." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483-84 (1986)).[4] A policy may also be established by showing a "'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).

Next, a plaintiff must show that the policy "'results from the decision or acquiescence of the municipal officer or body with final policy making authority over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (internal quotations omitted). Thus, a plaintiff must show that the policy was promulgated by the municipality's policymaker. There is no "'de facto' final policymaking authority." *Id.* (citations omitted).

Finally, a plaintiff must show that the policy was the moving force behind the relevant violation of constitutional rights. "In other words, a plaintiff must show direct causation," *id.* at 848 (citations omitted), meaning "'there must be a direct causal link' between the policy and the violation." *Id.* (quoting *Piotrowski*, 237 F.3d at 580).

College Station argues that Clancey's complaint is inadequate because it fails to allege any customs or policies, and also fails to set forth facts suggesting any causal link between College Station's policies and the constitutional violation he allegedly suffered.

---

[4] When the government official who allegedly committed the unconstitutional act is the policymaker for that part of government, "'policy' [] can be found to have been established by the very act itself." *Hampton Co. Nat'l Sur. v. Tunica County, Miss.*, 543 F.3d 221, 227 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)). "The act must be by a final decisionmaker who also is the policymaker, unconstrained by policies imposed from a higher authority." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993)).

The Court agrees. The only paragraph in Clancey's complaint that even addresses the issue of municipal liability asserts that Brown and Merrill are "policy makers and final decision makers for the City of College Station." (Doc. No. 1, ¶ 49.) This is insufficient to state a *Monell* municipal liability claim. Nowhere does Clancey allege any official policy or custom, or allege facts showing that Brown and Merrill's actions should be considered to be municipal policy. If Clancey attempts to do so simply by alleging that Brown and Merrill are final policymakers, he fails. These conclusory assertions, with no supporting facts, are insufficient to raise his claim for relief above a speculative level. Additionally, Clancey fails to set forth a single fact alleging a causal link between any municipal policy and the First Amendment retaliation he suffered.

The Court orders Clancey to amend his pleadings to cure the fatal deficiencies in his complaint. He may do so by amending the pleadings in one document and filing a Rule 7(a) reply in another, or he may include the amended pleadings in his Rule 7(a) reply. In his amended pleadings, Clancey must plead specific facts, rather than conclusory statements, to meet all of the elements of municipal liability outlined above. Thus, Clancey must allege specific facts showing that there was an official policy, promulgated by a municipal policymaker, that was the moving force behind the violation of his constitutional rights.

### IV. CONCLUSION

Clancey must amend his pleadings to state a claim for relief under Rule 12(b)(6), and additionally must file a Rule 7(a) reply tailored to the Individual Defendants' qualified immunity defense. He is ordered to do so no later than twenty (20) days from the date of this Order. He must make all of the changes outlined above. If the Court

satisfies itself that Clancey has stated a claim against the Individual Defendants and College Station, it may then order limited discovery on the qualified and sovereign immunity claims. If Clancey fails to cure the defects in his pleadings, the Court will dismiss the case.

Defendants City of College Station, Glenn Brown and Kathy Merrill's Motion to Dismiss Pursuant to FRCP Rules 12(b)(1) and 12(b)(6) (Doc. No. 9) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 25th day of March, 2010.

_(signature)_

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**