# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL CLANCEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:09-CV-1480** |
| | § | |
| **THE CITY OF COLLEGE STATION,** | § | |
| **GLENN BROWN, IN HIS INDIVIDUAL** | § | |
| **AND OFFICIAL CAPACITIES, AND** | § | |
| **KATHY MERRILL, IN HER** | § | |
| **INDIVIDUAL AND OFFICIAL** | § | |
| **CAPACITIES,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Renewed Motion to Dismiss Pursuant to FRCP Rules 12(b)(1) and 12(b)(6) and Motion to Strike First Amended Complaint (Doc. No. 27).

After considering the Motions, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motion to Dismiss Pursuant to FRCP Rules 12(b)(1) and 12(b)(6) is granted in part and denied in part and Defendants' Motion to Strike First Amended Complaint is granted.

## I.    BACKGROUND

A detailed set of facts can be found in the Court's prior Memorandum and Order dated March 25, 2010 (the "March 2010 Order") (Doc. No. 20). In the Court's prior order, we granted Plaintiff leave to file an amended complaint and Rule 7(a) reply to the defense of qualified immunity raised by Defendants. Specifically, we ordered Clancey to plead (a) particular facts surrounding his resignation/termination and why it constituted an adverse employment action, (b) specific information about the statements alleged to be matters of public concern, such as

when his statement(s) were made, to whom they were made, whether they were oral or written, and the content of the statements, (c) relevant facts addressing the causal link between his speech and any adverse action he suffered, and (d) specific facts showing the existence of an official policy, promulgated by a municipal policymaker, that was the moving force behind the violation of his constitutional rights. (Doc. No. 20 at 10, 11, 12, 14.) Clancey subsequently filed his first amended complaint (the "FAC") and Rule 7(a) Reply. (Doc. No. 26.) Defendants' motion to dismiss and motion to strike Clancey's FAC has followed. (Doc. No. 27.) In it, Defendants request that we take judicial notice of the City of College Station's ("College Station") City Charter while deciding the motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (approving examination of matters of which a court may take judicial notice in the Rule 12(b)(6) analysis); *Overton v. Austin*, 748 F.2d 941, 955 (5th Cir. 1984) (judicial notice of city charters is appropriate). The Court agrees and takes judicial notice of the City Charter and highlights the following relevant provisions:

- The City Council of the City of College Station is composed of six (6) Councilmen and are elected from the City at large. *See* City Charter §§ 17, 17(a);
- The City Council has the power to appoint and remove the City Manager. *Id.* §§ 22(1), 23;
- The City Council has the power to establish administrative departments and establish the organization and functions of divisions. *Id.* § 22(2);
- The City Council does not have the authority to exercise powers that are expressly conferred upon other City officers by the City Charter. *Id.* § 22;
- The City Manager is the chief executive officer and head of the administrative branch of the government, including the police department. *Id.* §§ 26, 41;
- The City Manager is responsible to the City Council for the proper administration of all affairs of the City. *Id.* § 41;
- The City Manager has the power and shall be required to: appoint and remove all officers and employees of the City; prepare the budget for submission to the City Council and be responsible for its administration after adoption; report to the City Council on city finances and administrative activities; keep the City Council advised of the financial condition and future needs of the City; and perform other duties allowed by Charter or required of him by the City Council. *Id.* § 41.
- Neither the City Council nor any of its members shall direct the appointment or removal of an individual to or from his office by the City Manager; however, the appointment or dismissal of department heads shall be subject to the approval of the City Council. Neither

the City Council nor any of its members shall give orders to any subordinates of the City Manager. *Id.* § 24.

Additional facts pled in the FAC will be discussed where relevant to the Court's analysis, below.

## II.    LEGAL STANDARD

### A. Rule 12(b)(1)

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

### B. Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, Case No. H-09-2408, --- F. Supp. 2d ----, 2010 WL 3749298 (S.D. Tex. Sept. 21, 2010).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). In such cases, the pleadings "must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

## III.   ANALYSIS

Defendants argue that Clancey's speech is not entitled to First Amendment protection and that he has failed to plead enough facts to meet the other required elements of a First Amendment retaliation claim. In addition, they argue that the FAC and Rule 7(a) Reply fail to allege particular facts to meet the heightened pleading standard necessary to overcome Defendants' qualified and sovereign immunity. Plaintiff argues that his FAC and Rule 7(a) Reply defeat the defense of qualified immunity and sufficiently alleges municipal liability.

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate

that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

A.     **Individual Liability of Defendants Brown and Merrill**[1]

Section 1983 claims against public officials in their individual capacities are subject to the defense of qualified immunity. *Foley*, 355 F.3d at 338. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). In examining whether an official is entitled to qualified immunity, a court "conduct[s] the two-step analysis" outlined in *Saucier v. Katz. See Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009)). A court first asks the "'threshold constitutional violation question' of whether, taking the facts in the light most favorable to the plaintiff, the [defendant's] alleged conduct violated a constitutional right." *Lytle*, 560 F.3d at 410. If the alleged conduct amounts to a constitutional violation, the court proceeds to the "'qualified immunity question' of whether the right was clearly established at the time of the conduct." *Id*. If a court answers "both the constitutional violation and qualified immunity questions affirmatively, the [defendant] is not

---

[1] The FAC and Rule 7(a) Reply also asserts that Defendants Brown and Merrill are liable under a theory of supervisory liability in their official capacity. (FAC ¶¶ 48-52.) Defendants do not argue in their motion to dismiss that these allegations fail to state a claim for relief under Rule 12(b)(1) or 12(b)(6). The Court simply notes that supervisory liability allows, under certain circumstances, a supervisor to be held liable for the acts of subordinates. *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."). Here, there are no acts of subordinates identified in the FAC and Rule 7(a) Reply that would impose supervisory liability on Defendants Brown and Merrill.

entitled to qualified immunity." *Id.* After the Supreme Court's decision in *Pearson v. Callahan*, a court need not address these two questions in that particular order.  129 S. Ct. at 818. Though *Pearson* outlines only the two steps described above in the qualified immunity analysis, several Fifth Circuit panels have stated that the "qualified immunity question" involves not only an inquiry into whether the right was clearly established at the time of the conduct, but also whether the official's action was objectively reasonable in light of the rules clearly established at the time it was taken. *See, e.g.*, *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."). We will address in turn the two questions outlined in *Pearson*.

### 1.  Violation of Clancey's Constitutional Rights

The Court's first task is to determine whether Clancey has sufficiently alleged a violation of a constitutional right. To establish a cause of action under Section 1983 for a First Amendment retaliation claim, a plaintiff must show the following: "(1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency (balancing under *Pickering v. Bd. of Education*, 391 U.S. 563 (1968)), and (4) his speech was a substantial or motivating factor behind the defendant's actions." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 375-376 (5th Cir. 2008) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)). Defendants argue that the FAC and Rule 7(a) Reply does not set forth sufficient facts with respect to the second and fourth elements in order to state a claim for relief for retaliation in violation of the First Amendment.

### (a) Adverse Employment Action

Although Defendants make no specific argument as to the sufficiency of Plaintiff's amended allegations regarding his resignation, the Court will assess whether the FAC and Rule 7(a) Reply provides the additional facts requested in the March 2010 Order. As described in that order, the Fifth Circuit historically has adopted a "narrow view of what constitutes an adverse employment action," including only actions that are "ultimate employment decisions" such as discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). A constructive discharge, where a plaintiff resigns rather than is terminated, may constitute an adverse employment action if the plaintiff demonstrates that his working conditions were so difficult or unpleasant that a reasonable person in his shoes would have been compelled to resign. *Faruki v. Parsons*, 123 F.3d 315, 318 (5th Cir. 1997); *see also Ibrahim v. City of Houston*, 2009 WL 1011193, *14-*15 (S.D. Tex. Apr. 15, 2009) (treating a resignation in lieu of termination as an adverse employment action). In the context of retaliation, the Supreme Court broadened the definition an "adverse employment action." It held that an adverse employment action could be based on actions that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 68 (2006); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (recognizing that *Breaux* remains controlling for Title VII discrimination claims while *Burlington* imposes the applicable standard for Title VII retaliation claims). However, because the Fifth Circuit has not yet formally applied *Burlington* to First Amendment retaliation claims, *see DePree v. Saunders*, 588 F.3d

282, 288 (5th Cir. 2009), we will apply the *Breaux* standard to assess the alleged adverse employment action.

In the FAC and Rule 7(a) Reply, Plaintiff provides additional factual allegations about the events leading up to his resignation. He claims that, after his statements about the red light camera program, Defendant Brown stopped seeking his counsel on important issues and began ignoring his requests. Defendants Brown and Merrill gave Clancey a poor performance review and, during a budget review, indicated that he would get very little of what he sought. Clancey states that he was subjected to baseless accusations by Defendants Brown and Merrill of violating City policy, untruthfulness, and unbecoming conduct. He states that, after increasing pressure by Defendants Brown and Merrill, he entered Defendant Brown's office one day to find a mock-up of the local newspaper's front page with a photo of himself and the caption "Police Chief Steps Down." (FAC ¶ 40.) Brown allegedly told Plaintiff, "Things are not working out. We need to make a change and are going to let you go." (*Id.*) Plaintiff told Brown that he would prefer to retire than be fired, which, after consultation with other city officials, was deemed permissible. (*Id.* ¶ 41.) Plaintiff's letter of resignation was drafted for him and he was asked to sign the letter. (*Id.* ¶ 42.) These facts, taken as true, make out a plausible claim that Plaintiff was terminated by Defendant Brown, which is undisputedly an adverse employment action under Fifth Circuit law. Plaintiff's resignation appears to have been only an alternative to the pre-determined termination, rather than Plaintiff's voluntary choice. Alternatively, even if Plaintiff was not terminated, the hostile and aggressive situation created by Defendants Brown and Merrill was calculated to lead to Plaintiff's resignation and constitutes a constructive discharge. *See Faruki*, 123 F.3d at 319 (the intolerableness of working conditions can be demonstrated through evidence of "badgering, harassment, or humiliation by the employer calculated to

encourage the employee's resignation.")  Thus, the Court finds that the FAC and Rule 7(a) Reply

has set forth additional and sufficient facts to state a claim for an adverse employment action.

### (b) Speech Involved Matter of Public Concern

Defendants argue that Plaintiff's speech is unprotected under the First Amendment

because Plaintiff spoke in an official capacity and his speech did not involve a matter of public

concern. The First Amendment protects a public employee's right, in certain circumstances, to

speak as a citizen on matters of public concern. *Pickering v. Board of Educ.*, 391 U.S. 563, 568

(1968); *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008). After the Supreme Court's

decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Fifth Circuit has adopted the following

test to determine whether a public employee has engaged in protected speech:

> *Garcetti* . . . holds that before asking whether the subject-matter of particular speech is a
> topic of public concern, the court must decide whether the plaintiff was speaking "as a
> citizen" or as part of her public job. Only when government penalizes speech that a
> plaintiff utters "as a citizen" must the court consider the balance of public and private
> interests, along with the other questions posed by *Pickering* and its successors . . . .

*Davis*, 518 F.3d at 312 (adopting test developed by Seventh Circuit in *Mills v. City of Evansville*,

452 F.3d 646, 647-48 (7th Cir. 2006)). Thus, a court must shift focus "from the content of the

speech to the role the speaker occupied when he said it." *Davis*, 518 F.3d at 312; *Williams v.*

*Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). "Job-required speech is not

protected." *Williams*, 480 F.3d at 693. "Even if the speech is of great social importance, it is not

protected by the First Amendment so long as it was made pursuant to the worker's official

duties." *Id.* at 692. *Williams* makes the distinction between "speech that is the kind of activity

engaged in by citizens who do not work for the government and activities undertaken in the

course of performing one's job." *Id.* at 693. "Activities undertaken in the course of performing

one's job are activities pursuant to official duties." *Id.* at 692. In determining whether speech was

pursuant to an individual's official duties, courts review a number of factors, none of which is dispositive: the employee's formal job description; whether the employee spoke on the subject matter of his or her employment; whether the employee raised complaints or concerns up the chain of command; and whether the speech resulted from special knowledge gained as an employee. *Williams*, 480 F.3d at 692; *Davis*, 518 F.3d at 313; *Charles v. Grief*, 522 F.3d 508, 513 (5th Cir. 2008).

If an individual is determined to have spoken "as a citizen," the court must next decide whether the individual's speech is on a matter of public concern. "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick v. Myers*, 461 U.S. 138, 146, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)). "When an employee speaks purely on a matter of personal interest, clearly no constitutional protection attaches." *See Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998). However, "[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). In such "mixed speech" cases, the court examines the "content, context, and forms of the statements at issue" to determine whether the speech is predominantly public or predominantly private. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003). "Speech may relate to the public concern if it does not concern solely personal matters or management policies; if releasing the speech to the public would "inform the populace of more than the fact of an employee's employment grievance" or the speech occurs against the backdrop of public debate; and if the speech was not "in furtherance of

a personal employer-employee dispute." *Kennedy v. Tangipahoa Parish Library,* 224 F.3d 359, 366 (5th Cir. 2000).

The Court will review the two instances of speech that Clancey has pled in the FAC in order to determine whether either is protected.

### i.      The Red Light Camera Program

First, Clancey expressed disagreement and concerns regarding College Station's red light camera program. The red light camera program was placed on the City Council docket and was listed for public discussion and comment in a document known as the City Council packet, which contained matters to be considered by the City Council. (FAC ¶ 26.) He complained to Defendant Brown, the City Manager, Terry Childers, the Deputy City Manager, and to the City Council. He told Brown and Childers that "the revenue generating aspect of the program was a scam to make money, and an 'under the table' tax to avoid raising taxes." (*Id.* ¶ 27.) Clancey expressed his opinion that the program should be enacted to improve citizen safety rather than to "bilk money" from citizens. (*Id.*) Clancey states, in conclusory fashion, that he spoke about the red light camera program in his capacity as a citizen, not in his official capacity. (*Id.* ¶ 29.)

Our review of the facts alleged in the FAC and Rule 7(a) Reply indicates that Clancey was speaking as a citizen, rather than pursuant to his official duties as police chief, when he made the comments about the red light camera program. The program was listed for public comment and discussion among the matters to be considered by City Council and was on the City Council docket. Clancey's formal job duties do not appear to require him to speak on matters such as the red light camera program. Clancey's criticisms did not relate to the subject matter of his employment—i.e., overseeing the police department as police chief of College Station. Finally, and most importantly, Clancey's remarks to the City Council and city

12

employees have a "relevant analogue to speech by citizens who are not government employees," *Garcetti*, 547 U.S. at 423, i.e., an individual may appear before City Council to discuss and offer his or her opinion about the red light camera program.

Defendants argue that Clancey made these criticisms pursuant to his official duties as police chief because they were made up the chain of command, were made pursuant to his official job duties, and reflected knowledge and experience Clancey acquired as police chief. While Clancey's remarks to Defendant Brown and to the City Council appear to be made up his chain of command, this fact alone does not render his remarks to be made pursuant to his "official duties." Rather, *Davis* instructs, "when a public employee raises complaints or concerns up the chain of command at his workplace *about his job duties*, that speech is undertaken in the course of performing his job." 518 F.3d at 313 (emphasis added). Here, Clancey's concerns over the red light camera program's impact on the public fisc, and the motivations of the City Council and city officials in adopting it, do not involve any complaints or concerns relating to his job duties as police chief.

Further, Clancey's description of his job duties in the FAC, which must be accepted as true at the 12(b)(6) dismissal stage, do not obviously and clearly require him to comment on issues such as the red light camera program. Clancey states that, as the police chief of College Station, he was responsible for a staff of over one hundred and sixty employees, including one hundred sworn peace officers, and an annual budget of approximately $13 million dollars. He implemented new policies that made the police department operate more effectively and efficiently. (FAC ¶¶ 19-20.) Nothing in this description on its face required Clancey to issue his opinion regarding items on the City Council docket such as the red light camera program, nor indicates that Clancey would have to comment upon such matters in the course of performing his

duties as police chief. In contrast, the assistant prosecutor in *Garcetti* received no First Amendment protection for statements made in a memorandum to his superiors because he was required to write and deliver such memoranda as part of his job duties. 547 U.S. at 421-22. In *Williams*, the Fifth Circuit found that an athletic director's complaints to his superiors about the management of the athletic accounts, while not required, were made "in the course of performing [his] job" because the athletic director was in charge of operations and needed information about the bank accounts in order to operate the athletic department. 480 F.3d at 693, 694. Neither of these situations appear to be present here.

Finally, even if Clancey were able to comment intelligently upon the red light program based on knowledge he acquired in his role as police chief, this special knowledge does not render his statements "officially" made. As the Fifth Circuit has stated, "[t]o hold that any employee's speech is not protected merely because it concerns facts that he happened to learn at work would severely undercut First Amendment rights." *Charles v. Grief*, 522 F.3d at 513. The overarching theme of Clancey's statements was that the red light camera program was an inappropriate way to collect revenue and should not be characterized as a revenue-generating program. These criticisms—which could have been made by any other College Station citizen— may have been reinforced by Clancey's long-standing experience as a police officer, but do not appear to have arise solely from Clancey's experience as police chief of College Station. *See Foley v. Town of Randolph*, 598 F.3d 1, 5 (1st Cir. 2010) (citing *Garcetti*, 547 U.S. at 419) (recognizing the right of the general public to receive the "*well-informed* views of government employees engaging in civic discussion").

We proceed to the next step of the analysis—whether Clancey spoke on a matter of public concern. Clancey states in the FAC and Rule 7(a) Reply that the red light camera program

was a "scam to make money," an "under the table tax," and a way to "bilk money" from citizens. (FAC ¶ 27.) Defendants contend that Clancey's concerns were about the public fisc or internal management and budgetary decisions, rather than misconduct or corruption, and do not qualify as matters of public concern. "It is well-established that speech relating to official misconduct involves matters of public concern." *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008); *Aguinaga v. Tex. Alcohol & Bev. Comm'n*, 98 Fed. Appx. 328, 331 (5th Cir. 2004) ("Matters of public concern include misuse of public money or other corruption but generally do not encompass complaints about churlish or incompetent management."); *Juarez v. Brownsville Indep. Sch. Dist.*, 2010 U.S. Dist. LEXIS 40098 (S.D. Tex. Apr. 23, 2010) (recognizing that reports about wrongdoing and corruption of public officials are matters of public concern); *Marek v. Hildebrand*, 2008 U.S. Dist. LEXIS 58091 (W.D. Tex. July 31, 2008) (holding that an employee's accusations that a county commissioner misused county resources for private purposes constituted matters of public concern). Although comments about public monies and government efficiency may not, by themselves, qualify speech as a matter of public concern, they may imply that a public agency or official is corrupt. *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988); *but see Foley*, 598 F.3d at 6-7 (a fire department chief's remarks on department budget and diminished resources is "certainly of concern to the public").

Here, the red light camera program, which would obviously be implemented along the streets and roads of College Station and would impose a fine upon non-compliant citizens, would be one that the College Station community would have been interested in. Clancey's criticisms of the program were not based on personal problems or management policies, but were related to the public justification for the program and its impact on the public fisc. *See Kennedy v. Tangipohoa Parish Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000) ("If releasing the

speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature.") Moreover, Clancey's allegations about the potential official conduct or misuse of citizen funds would be important to College Station citizens, who elect the members of the City Council, who, in turn, are responsible for appointing Defendant Brown, the City Manager. Finally, the red light camera program was listed for public comment and discussion, further reinforcing its character as a topic in which the public at large could play a role in discussing. Thus, the Court finds that Clancey has alleged sufficient facts about the content of his statements, whether they were oral or written, when they were made, and to whom they were made to support a claim that his comments about the red light camera program regarded a matter of public concern.

### ii.  The City's Staffing Needs

Second, Clancey "spoke out" about his opinion that the police department was critically understaffed, thereby creating serious safety concerns. (FAC ¶ 31.) Specifically, he expressed his belief that there were too few police officers to protect College Station and citizens during large events, such as football games. (*Id.* ¶ 32.) He went as far as to say that the failure to hire more officers could "get an officer hurt or killed." (*Id.*) He spoke to Defendant Brown, Defendant Merrill, Terry Childers, to the City Council, at town hall meetings, and to fellow citizens about his opinions and concerns. (*Id.* ¶ 31.)

Clancey has not pled sufficient facts in the FAC and Rule 7(a) Reply to support a claim that his statements about staffing levels were made as a citizen rather than pursuant to his official duties as police chief. Clancey states in the FAC that he was responsible for overseeing the staff of the police department, including police officers. As such, an assessment of the number of police officers needed in College Station, and whether the current staffing level was adequate,

would have facilitated Clancey's ability to effectively manage his department and oversee personnel. Therefore, Clancey's expressed opinion that the College Station police department was understaffed would appear to have been made during the course of performing his job. *See Williams*, 480 F.3d at 693; *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir. 2006) (finding unprotected speech when a police officer made negative remarks following an official meeting to discuss plans to reorganize the department because the remarks were made "in her capacity as a public employee contributing to the formation and execution of official policy."). Although speaking on a subject related to one's employment is not dispositive, Clancey has not alleged sufficient facts that would render his comments about staffing outside of the purview of his ongoing responsibilities as police chief. Moreover, Clancey has not alleged facts that would suggest that his concerns, though expressed to individuals appearing to be in his chain of command, were not related to his job duties. *See Davis*, 518 F.3d at 313. Clancey's statements at town hall meetings and to other individuals outside of the workplace cannot be characterized as statements made as a citizen, because Clancey has not offered enough detail to suggest that these statements are anything other than "mere extensions" of his statements to Defendant Brown, Defendant Merrill, and to City Council. *Id.* at 314; *see also Umoren v. Plano I.S.D. Bd. of Trs.*, 2010 U.S. Dist. LEXIS 89953 (E.D. Tex. July 27, 2010) (a substitute teacher's complaints to various state and federal agencies, including the EEOC, were not protected speech because they were mere extensions of his complaints to the school board about substitute teacher policies). Thus, the Court concludes that, even accepting all the additional factual allegations contained in the FAC and Rule 7(a) Reply as true, Clancey has failed to allege sufficient facts that would render his comments about the police department's staffing needs as matters of public concern.

**(c) *Pickering* Balancing Test**

The "*Pickering* balancing test" weighs a plaintiff's First Amendment rights against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (quoting *Pickering*, 391 U.S. at 568). "In performing the balancing . . . the manner, time, and place of the employment's expression are relevant, as is the context in which the dispute arose." *Branton*, 272 F.3d at 741. Thus, the test "recognize[s] as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships . . ., or impedes the performance of the speakers duties or interferes with the regular operation of the enterprise." *Id.*

Defendants have not argued that Clancey's statements about the red light camera program impeded or harmed the proper and effective functioning of the police department or the police department's relationship with other city agencies or officials. Based on the averments in Clancey's FAC and Rule 7(a) Reply read in favor of Clancey, the Court finds that the FAC satisfies the *Pickering* balancing test.

### (d) Motivation Behind Adverse Employment Action

In his FAC and Rule 7(a) Reply, Clancey outlines the following facts that suggest his constructive discharge was motivated by his protected speech. Clancey states that he began working as police chief of College Station in January 2005 and rapidly improved the department by implementing new policies to assist the police department to operate more efficiently and effectively. He reports receiving a favorable performance evaluation in March 2006:

> Mike is a tremendous asset to the City of College Station Police Department and Management Team. The city of College Station is fortunate that we attracted someone of his caliber. . . . Bottom line, Mike does a very good job, runs a good department, and he and his staff provide excellent customer service. I am proud that Mike Clancey is the Police Chief for College Station.

Clancey made his statements about the red light camera program to Defendant Brown and City Council in or around January or February 2007. After he made these statements, Defendant Brown "stopped seeking his counsel on important City issues, and began ignoring his requests to be heard on other matters." In Spring 2007, Clancey made his complaints about staffing and was told by Defendant Brown in April 2007 not to complain about this issue. In July 2007, Clancey received his first poor performance review, which listed a number of alleged deficiencies that he was supposed to rectify by November 1, 2007 in order to avoid termination. During his performance review, Defendant Merrill refused to clarify Clancey's shortcomings, but simply told him that he wasn't listening. Also during this performance review, Clancey was accused of not being a team player. In September 2007, Clancey's requests during the budget process were refused and he was treated harshly during the budget meeting. Clancey was subsequently accused without basis of violating City policy, untruthfulness, and unbecoming conduct. In October 2007, Clancey was told that he was being terminated, which he managed to avoid by offering to resign instead.

Defendants argue that Clancey has failed to show that the adverse employment action (his resignation or constructive discharge) was *motivated* by his protected speech, as opposed to simply existing in close temporal proximity to the speech. It is true that "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Health Care Sys.*, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007). Courts must look behind the sequence of events to determine whether the adverse employment action resulted from the employee's protected speech. Here, Clancey has alleged facts showing that he received a highly favorable performance review in March 2006 and an extremely negative review, threatening termination, only about sixteen months later in July 2007. The negative performance review was preceded by and was followed

by Defendant Brown's and Defendant Merrill's harsh comments towards Clancey, their sanctions during the budget process, and their efforts to cut him out of decision-making processes. Accepting the facts in the FAC as true, the meeting at which Clancey was told that he was being terminated, and subsequently resigned himself, occurred as an outgrowth of Defendant Brown's and Merrill's negative actions, statements, and attitude toward him during the preceding months. Thus, more than simple temporal proximity tied Clancey's protected speech to the adverse employment action. Unlike the plaintiff in *Strong*, and like the plaintiff in *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992), Clancey has alleged facts showing that he did not have a disciplinary history prior to his protected speech, but that one was created after the speech alongside harassing behavior by Defendants. These facts are sufficient to show at the Rule 12(b)(6) stage that Clancey's constructive discharge was motivated by his protected speech.

In sum, Clancey has alleged a violation of his First Amendment rights based on his comments regarding the red light camera program.

### 2.   Were Clancey's Constitutional Rights Clearly Established

The Court proceeds to the second step of the qualified immunity analysis—whether Clancey's constitutional right "existed at the time of the violation so that [the defendants'] behavior may be deemed objectively unreasonable." *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004). Clancey "must show that the 'contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . Qualified immunity should not be denied unless the law is such that reasonable officials should be 'on notice [that] their conduct is unlawful.'" *Id.* at 146-47 (quoting *Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004)).

At the time of the alleged violation of Clancey's free speech rights, both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech. *Pickering*, 391 U.S. at 568; *Connick*, 461 U.S. at 146-47; *United States v. Mauricio*, 685 F.2d 143, 147 (5th Cir. 1982). As to the law relating to matters of public concern, the Fifth Circuit stated in 2000, well before the speech at issue here occurred, that "[i]f releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature." *Kennedy*, 224 F.3d at 372. The Court uses this same standard today. *Garcetti*, which was decided by the Supreme Court in 2006, and its progeny in the Fifth Circuit, including *Williams*, *Davis*, and *Nixon*, do not change what type of speech constitutes a matter of public concern, but simply "added a threshold layer to our previous analysis" by requiring a court to focus on the role that the speaker occupied when he spoke. *Davis*, 518 F.3d at 312. Even after *Garcetti*, the Fifth Circuit continues to analyze whether an individual's speech is a matter of public concern by determining whether releasing the speech would inform the populace of more than an employee grievance. *See Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006). Similarly, the law regarding adverse employment actions has long included termination and constructive discharge as actionable conduct. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *Faruki v. Parsons*, 123 F.3d 315, 318 (5th Cir. 1997). Thus, the established law at the time of Clancey's speech and his resignation was sufficiently clear to have given Defendants notice that, by constructively discharging Clancey as a result of his comments about the red light camera program, they were violating Clancey's First Amendment right. Clancey has pled sufficient facts to overcome the defense of qualified immunity for Defendants Brown and Merrill.

### B.    Municipal Liability of the City of College Station

Defendants argue next that Clancey's FAC and Rule 7(a) Reply fail to allege facts that support a claim against College Station. A local government may be sued under Section 1983 "'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Municipal liability may also attach where the constitutional violation occurs pursuant to a governmental custom that has not received formal approval. *Id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To establish municipal liability, a plaintiff must establish three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. *Id.* (quotations omitted). The March 2010 Order instructed Clancey to include facts within his amended complaint and Rule 7(a) reply regarding the existence of an official policy, promulgated by a municipal policymaker, that was the moving force behind the constitutional violation.

The FAC and Rule 7(a) Reply indicate that Defendants Brown and Merrill were the policymakers and final decision makers for purposes of municipal liability. Regarding the existence of an official policy, the FAC and Rule 7(a) Reply state that Defendants Brown and Merrill each participated in Clancey's termination and had the authority to remedy the wrongdoing. The FAC and Rule 7(a) Reply do not aver any additional facts as to how the policy motivated Clancey's constructive discharge. We will assess these facts to determine whether they meet the standard necessary to make a claim for College Station's municipal liability.

The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality. *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748-49 (5th Cir. 2005). A

policymaker is "one who takes the place of the governing body in a designated area of city administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). He or she must "decide the goals for a particular city function and devise the means of achieving those goals." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc). The governing body may delegate policymaking authority in either of two ways. It may delegate policymaking power by an express statement, by a job description or by other formal action. Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. *Id.* In either case, the delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee. *See Brewer v. Blackwell*, 692 F.2d 387 (5th Cir.1982).

Here, Defendants Brown and Merrill are identified as the relevant policymakers. We first examine whether either has been delegated policymaking power through an express statement, job description or other formal action. The bare allegation in Plaintiff's FAC regarding Defendant Merrill's policymaking authority fails because neither the FAC nor the City Charter provides any factual basis for such a conclusion. Defendant Brown, however, is different. In his case, we examine the City Charter. In the City Charter, City Manager is designated as the "chief executive officer and head of the administrative branch of the government," which includes the police department. City Charter §§ 26, 41. He is responsible for "proper administration of *all* affairs of the City." *Id* § 41 (emphasis added). The City Manager has the exclusive power to hire and fire all City officials and employees. *Id.* §§ 22, 41. With respect to department heads such as the police chief, however, the City Manager's removal of an individual from that position is subject to the approval of the City Council. *Id.* § 24.

The Fifth Circuit decision in *Bolton v. City of Dallas*, 541 F.3d 545 (5th Cir. 2008), guides our analysis. In *Bolton*, a city manager who possessed almost identical authority to the City Manager of College Station was held not to have policymaking authority in the decision to fire the chief of police in Dallas. The court arrived at that conclusion by examining the city charter and noting that, while the city manager could remove the police chief from his position as head the department, the city manager could not terminate his employment with the police department entirely. Therefore, the city manager's action did not represent "final policy" with respect to termination of city officials such as the police chief. *Id.* at 551. Defendant Brown's ability to remove Clancey from the position of police chief of College Station was similarly proscribed, requiring the approval of City Council. Though Brown may have had final decision-making power over the decision to terminate Clancey's employment, he did not have either final decision-making or policy-making power over the decision to remove Clancey from his position as police chief.

Since there are no express statements or formal designations of policymaking power, we next examine whether the FAC has sufficiently alleged that College Station, through conduct or practice, encouraged or acknowledged Defendants Brown and Merrill in policymaking roles. The FAC has pled no facts to support a claim that Defendants Brown and Merrill had implicit policymaking authority through custom or practice. Thus, neither Defendants Brown nor Merrill can be deemed as policymakers for purposes of municipal liability.

The Court need not review the other elements required to establish municipal liability. Clancey's FAC and Rule 7(a) Reply has not alleged sufficient facts to state a claim of municipal liability. Clancey's claims against the City of College Station are dismissed.

## IV.    MOTION TO STRIKE

Defendants have moved to strike the portion of the FAC raising a claim based on a violation of the Due Process Clause of the Fourteenth Amendment. Defendants argue that Plaintiff agreed to withdraw his Due Process claim in his response to Defendants' first motion to dismiss. Plaintiff responds by agreeing to withdraw the claim or, alternatively, does not object to the Court's striking of the claim. Accordingly, the Court will strike from the FAC Plaintiff's claim of a violation of the Due Process Clause of the Fourteenth Amendment.

## V.    CONCLUSION

For the reasons stated in this order, Motion to Dismiss Pursuant to FRCP Rules 12(b)(1) and 12(b)(6) (Doc. No. 27) is **GRANTED IN PART** as to Plaintiff's claims against Defendant City of College Station and **DENIED IN PART** as to Plaintiff's claims against Defendants Brown and Merrill. Defendants' Motion to Strike First Amended Complaint is **GRANTED** (Doc. No. 27). Clancey's claims against the City of College Station are hereby **DISMISSED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 31st day of January, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE